# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| VICTORY THROUGH JESUS SPORTS )<br>MINISTRIES FOUNDATION and )<br>GORDON HUNJAK, )<br>)<br>                Plaintiffs, )<br>)<br>v. )<br>)<br>CITY OF OVERLAND PARK, KANSAS, )<br>)<br>             Defendant. )<br>_____) | Case No. 12-2534-KGG |

## FINAL ORDER GRANTING JUDGMENT
## IN FAVOR OF PLAINTIFFS
## AND IMPOSING PERMANENT INJUNCTION

This matter is before the Court for trial upon stipulated facts.[1]  The Court has reviewed the stipulations, reviewed the parties' memoranda, and entertained oral argument.[2]

Plaintiffs challenge a Resolution enacted by Defendant City of Overland Park which prevents Plaintiffs from handing out pamphlets promoting its camps on the sidewalks outside the gates of an enclosed outdoor soccer facility.  Plaintiffs

---

[1]  The Stipulated Facts are filed at Doc. 55.  This case was tried by consent to the Magistrate Judge pursuant to 28 U.S.C. §636(c) and Fed.R.Civ.P. 73.  (Doc. 52.)

[2]  To the parties' credit (see Fed.R.Civ.P. 1), they agreed to allow the Court to consider the legal argument in the memoranda related to their withdrawn dispositive motions (Docs. 21, 28, 33, 35) as their trial briefs.

challenge the Resolution as a violation of the First Amendment guarantee of free speech.  Defendant claims that the area at issue is not a "public forum," and that the regulation is necessary to ensure the efficient flow of pedestrian traffic to and from the facility and prevent litter.

## FACTS

### A.     The Soccer Complex.

In 2008 and 2009, Defendant City built a soccer complex on City property previously used as a city park and public golf course.  The resulting outdoor facility is owned and operated by the City.  The complex consists of twelve full-size soccer fields, playgrounds, concession areas, office space, storage areas, a lounge, locker rooms, a first aid office, and parking areas.  Photographs of the facility admitted by stipulation also reveal a skate park, baseball diamonds and tennis courts, and a family farm area on the south side.[3]

The complex is bordered on the north by 135th Street and on the east by Switzer Road.  City sidewalks parallel both streets next to the complex.  The complex is not fenced off from these main streets.

An access road, built to service the new complex,  runs irregularly on a

---

[3]  In argument counsel for Defendant indicated that the baseball diamonds are on long-term lease to a third party and the farm area may be rented for a fee on a reservation-only basis.

diagonal northwest to southeast bisecting the complex from 135th Street to Switzer road.  The access road is not fenced.  Use of this road is open to the public.  A biking/hiking trail runs through the complex between 135th Street and Switzer, roughly parallel to and west of the access road.  The trail is not fenced.

The complex contains 12 soccer fields, nine in the western portion (to the west of the access road) and three in the eastern portion.  The nine contiguous fields on the west side are fenced from the parking lots and the access road.  Visitors enter and exit through four gates on the east side, providing entrance from the parking areas and the access road.  Sidewalks run along the outside of the fence from the main streets and lead to the gates.  The main gate is 20 feet wide, and the #2 gate is 10 feet wide.  The complex includes two interior parking lots for visitors to the western fields.  The sidewalks follow the fences and extend to connect to the two main roads.  At the areas of the main gates to the western fields, walkways jut out in a rectangle from the gate areas into the parking lot areas.  A 10-foot wide walkway leads from the parking areas to the gates.  All of these walkways outside the gates are open for general public use when the complex is open, and there are no restrictions on using these to, for example, walk a dog or jog for exercise.  There are also walkways inside the gated area connecting the fields.

The fields inside the gated area are not open to the general public.  They may

only be used by groups who rent or lease the facility, or portions of it, for a fee. The intended purpose of the complex was and is to lease or rent space to groups for privately-organized soccer practices, contests, and tournaments. The fields inside the gates are open only when rented or leased by a group. When the fields are not rented or leased, the fields are not open and the gates are closed. During the nine-month soccer season from March 1 to December 1, 2012, the complex was visited by 986,626 people.

**B.     The City's Policy and Ordinance.**

The City does not intend the gates or the sidewalks from the parking lots to be a forum for public discourse, public debate, or assembly by members of the general public. First by practice, and now by resolution, the City prohibits such expressive activity around the gates, the parking lots, and the sidewalks from the parking lots to the gates. The City has never permitted such use, and has directed persons to stop distributing literature when it learns of such activities.

Parking at the complex is limited[4] and the City prohibits activities that hinder the efficient flow of pedestrian traffic between the soccer fields and the parking lots. Flyer distribution at the complex can create a trash problem when

---

[4] Parking is limited by the number of parking spaces. There is no evidence that parking in the lots for purposes other than to access the soccer fields is prohibited.

4

recipients throw unwanted promotional materials on the ground.

The distribution of literature is prohibited even if it does not slow down traffic or cause a trash problem. Groups who lease portions of the complex are permitted to distribute informational material only to their patrons, and only in the space (fields) rented or leased by the group. In at least one instance, when a group leased the entire complex, one of the group's sponsors (a college) was permitted to set up a tented table and distribute literature on the walkway inside the gated section.

Initially, the City's policy was unwritten, but prohibited the distribution of any literature on the parking lot sidewalks near the fenced soccer fields. Individuals who attempted to do so were asked to stop. In May 2012, the City put this policy in writing for staff members of the complex. The written policy stated that the interior portion of the soccer complex (i.e. the entire complex both within and without the fenced areas) "has not been designated a public forum for the purpose of First Amendment protected activity." The written policy prohibited distribution of literature in the interior portions of the complex, except that renters were still allowed to provide materials to their patrons in renter spaces. An e-mail included a map showing City officials where expressive activity was permitted and where it was restricted. It also scripted language to use when confronting violators

and invited recipients to contact the complex managers with any questions.

On June 18, 2012, the City adopted a formal resolution (Resolution 3946)

codifying its previous policy, which provides:

Resolution 3946, Section 1, declares:

> The building interiors, the interior grounds, the parking
> lots, the interior parking lot sidewalks and the exterior
> grounds of the Soccer Complex and the Farmstead are
> hereby declared to be ''non-public' forums, not open to
> the indiscriminate use of the general public for First
> Amendment expressive activity.  These areas are not
> intended to be used as a forum for individuals to impose
> or offer their views to others unless invited to do so.
> Speeches, picketing, hand billing, pamphleteering and
> similar expressive activity shall not be allowed in these
> areas.  The areas of the facilities that are declared to be
> 'non-public' forums where First Amendment expressive
> activity is not permitted is shown on the map attached
> hereto as Exhibit A and described in the legend as 'Not
> Permitted.'

Resolution 3946, Section 2, states:

> The sidewalks adjacent to the access road between 13th
> Street and Switzer Road are hereby declared to be
> designated public forums.  Speeches, picketing,
> handbilling, pamphleteering and similar First
> Amendment expressive activity are permitted on said
> sidewalks; provided, the expressive activity does not
> block the ingress or egress along said sidewalks, does not
> create a sight line or other safety hazard along said
> sidewalks, or said access road, and will not result in a
> violation of any City, state, or federal law.  The areas of
> the facilities and adjacent sidewalks and roads that have
> been declared 'designated public forums' where First

Amendment expressive activity is permitted is shown on the map attached hereto as Exhibit A and described in the legend as 'Permitted.'

Resolution 3946, Section 3, acknowledges that the public sidewalks along 135th Street and Switzer Road are traditional public forums.

A keyed map showing permitted and non-permitted free speech areas accompanied the ordinance. Except for the walking trail and two small strips of land alongside the access road (but not near the gates or parking lots), the ordinance prohibits any free speech activities in the entire complex, including all sidewalks, both within and without the gates, and the parking lots. This includes all sidewalks and the access road.

Under rules published to implement the Resolution, the Soccer Complex staff determines what activities fall within the parameters of "expressive activity" that is "similar" to speeches, picketing, handbilling, and pamphleteering. Such activity is prohibited regardless of whether the it poses a sight line or safety hazard, or impedes traffic flow. The wearing of political buttons and clothing by persons visiting the facility for its intended use would not be prohibited. The question of whether an expressive activity is or is not "invited" is determined by Staff based on whether it is just a conversation between two people or someone is approaching individuals on a constant basis to engage them. Talking to a general crowd of

people is never permitted.  Staff may read material only to determine whether the communication is made by a rent-paying tenant and pertains to the soccer-related purpose of the rental.  While speech is not prohibited on the access road itself, the City will not permit speakers to attempt to stop traffic along the access road to distribute brochures.

C.     **Plaintiffs' Activities.**

Plaintiff Victory Through Jesus Sports Ministries Foundation and Plaintiff Hunjak hold camps to teach children the fundamentals of soccer while developing leadership and life skills.  The camps combine sports learning with Bible lessons and Biblical principles, and they seek to develop character and integrity.  Unless they receive a scholarship, campers must pay a fee to attend most of Plaintiffs' camps.

Plaintiffs have no contract to use the soccer complex.  On April 21, 2012, Plaintiffs (through Plaintiff Hunjak's wife and son) began distributing promotional flyers inside the fence surrounding the nine western soccer fields.  Another group had leased the fields that day.  Plaintiffs did not communicate with City officials about this activity prior to that activity, but assumed the area was a public forum where First Amendment activity was permitted.  Plaintiffs were not aware of any others who had been permitted to distribute literature at the restricted areas of the

complex. A representative of the leasing organization instructed Plaintiffs to stop distributing literature. Plaintiffs then moved outside the fence and distributed flyers on the walkway near the gates. They were again told to stop.

Plaintiff Hunjak met with City officials on May 4, 2012, and was shown, on a map, where literature distribution was not permitted. Notwithstanding, Plaintiffs returned to the complex on May 19 and distributed flyers on the sidewalk outside of the fenced areas, a few feet away from the gates, where officials had told Plaintiffs such activity was not permitted. City officials, and ultimately police, told Plaintiffs to stop the activity and threatened arrests. Plaintiffs then stopped distributing flyers. City officials were concerned that Plaintiffs' activities would block ingress and egress to the parking lot sidewalks and slow access to and from the soccer fields. City officials did not read Plaintiffs' flyers. When the City met to discuss and pass Resolution 3946, Plaintiffs were aware of the public meeting but did not attend.

Plaintiffs have distributed literature at City parks, public and private schools, preschools, soccer leagues, churches and day care centers. This includes distribution at other soccer fields maintained by the City in a public park. The only place the City has not permitted Plaintiffs to distribute flyers is the sidewalk near the gate area and interior parking lot sidewalks of the Soccer Complex. Plaintiffs

distributed more than 58,000 flyers in 2012.  Plaintiffs wish to distribute literature on the sidewalks outside the gates of the Soccer Complex.

## DISCUSSION

Plaintiffs bring this action to challenge the Resolution and its enforcement under the First Amendment Guarantee of free speech.  Plaintiffs challenge the application of the Resolution to them and claim that the enactment is unconstitutional on its face.  Plaintiffs request a Declaratory Judgement invalidating the Resolution, and a Permanent Injunction enjoining the City from enforcing the Resolution.  Defendant City responds that the area of the Soccer Complex in which free speech activities is prohibited is a non-public forum.  Defendant also argues that the restrictions constitute a view-point neutral and reasonable policy in light of the forum's purpose.

"The First Amendment, as applied to state and local governments through the Fourteenth Amendment, provides that state actors 'shall make no law . . . abridging the freedom of speech.'  U.S. CONST. amend. I.  The First Amendment applies not only to legislative enactments, but also to less formal governmental acts, such as city policies."  ***Hawkins v. City and County of Denver***, 170 F.3d 1281, 1286 (10th Cir. 1999) (citations omitted).  The city resolution at issue in this case, and the preceding formal and informal policies, are subject to this

Constitutional limitation. Defendant does not dispute that the activity at issue here – the distribution of literature by a religious organization to solicit participation in an event – is within the scope of protected speech.

Even so, it is "well settled that the government need not permit all forms of speech on property it owns and controls." ***Int'l Soc. for Krishna Consciousness, Inc. v. Lee***, 505 U.S. 672, 678, 112 S.Ct. 2701, 2705, 120 L.Ed.2d 541 (1992). The Government, "no less than a private owner of property, has power to preserve the properly under its control for the use to which it is lawfully dedicated." ***Greer v. Spock***, 424 U.S. 828, 836, 96 S. Ct. 1211, 1217, 47 L.Ed.2d 505 (1976). "The extent of the government's ability to restrict protected speech on public property depends upon the nature of the forum and whether the speech restriction is content-based or content neutral." ***Hawkins***, 170 F.3d at 1286 (*citing **Lee***, 505 U.S. at 678-79).

In determining the nature of the forum, the Supreme Court has divided public property into (1) traditional public fora; (2) designated public fora; and 3 nonpublic fora. *Id.* (c*iting **Arkansas Educ. Tele. Common v. Forbes***, 523 U.S. 666, 677, 118 S.Ct. 1633, 1641, 140 L.Ed.2d 875 (1998); ***Perry Educ. Ass'n v. Perry Local Educators' Ass'n***, 460 U.S. 37, 45-46, 103 S.Ct. 948, 954-956, 74 L.Ed.2d 794 (1983)). Traditional public fora are places, such as streets, sidewalks

and parks, which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for the purposes of assembly, communicating thoughts between citizens, and discussion public questions." *Perry Educ. Ass'n*, 460 U.S. at 45. *See also* *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939) (public streets and parks fall into the category of traditional public fora).

The government has the highest burden in defending a restriction of free speech in a public forum. Such a restriction may be content-neutral or content-based. A content-based restriction must be shown to be "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end. *Perry*, 460 U.S. at 45. Content-neutral restrictions in a public form will be upheld if they are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45; *Hawkins*, 170 F.3d at 1286.

The second category, a designated public forum, is one created by the government "by intentionally opening a non-traditional forum for public discourse." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc*., 473 U.S. 788, 802, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985); *Hawkins*, 170 F.3d at 1286. Neither party contends that the areas at issue were intentionally opened for

public discourse by the City.

The third category, non-public fora, is any other government property; e.g. any that is "not by tradition or designation a forum for public communication." *Perry*, 460 U.S. at 46; *Hawkins*, 170 F.3d at 1287. The government has greater latitude to regulate speech in a non-public forum. A restriction in a non-public forum, whether or not content-neutral, will be upheld if it is reasonable in light of the purpose served by the forum and is "not an effort to suppress expression merely because public officials oppose the speaker's view." *Hawkins*, 170 F.3d at 1287.

In this case it is necessary to define the forum before categorizing it. Plaintiffs describes the forum as the sidewalks outside of the soccer complex gates. Defendant describes the forum more narrowly as the "interior gate area."[5] In argument, Defendant described the forum as the walkway between the parking lots and the gates. Notably, the Resolution makes no distinction, but bans all pamphleteering, on sidewalks both within, without, and beyond the gated field area.

In defining the forum, the proper focus is the "access sought by the speaker."

_____

[5] By "interior," Defendant means that the area is within the complex, not necessarily inside the gated and fenced area.

*Cornelius*, 473 U.S. at 801. "When speakers seek general access to public property, the forum encompasses that property." *Id*. The claims in this case are defined by the Final Pretrial Order. (Doc. 23.) That Order "measures the dimensions of the lawsuit." *Hodgson v. Humphries*, 454 F.2d 1279, 1281 (10th Cir. 1972). In the Pretrial Order, Plaintiffs contend that the "sidewalk outside the fenced area" is a public forum, and seek an injunction allowing them "access to the sidewalk outside the fenced areas of the Soccer Complex." (Doc. 23, at 9, 14.)

The facts indicate that Plaintiffs only attempted – and were ordered to stop – distributing literature first on the walkways inside the gates, then on the walkways outside, but near, the gates. It would, however, be patently unreasonable to require Plaintiffs to perfect their right to challenge the broader prohibition by repeatedly violating the clear prohibition in the Resolution by attempting to distribute pamphlets at locations at increased increments from the gate. Plaintiffs are seeking general access to the property. The forum is properly defined as the sidewalks outside the gates.[6] It would inappropriate to narrow the forum to that suggested by Defendant, which is narrower than the access requested by the speaker or than the prohibition imposed by the Resolution.

---

[6] Plaintiffs have abandoned their attempt to access the walkways inside the gated and fenced area of the complex.

The sidewalk outside the fenced areas is a traditional public forum. The public sidewalk owned and operated by the City is, in this case, exactly what is appears to be to any person using it – a public, city sidewalk. It connects with sidewalks parallel to two major streets. Its access is unrestricted by physical or regulatory barriers. It provides access to the soccer fields and other amenities within the facility. It may be used by walkers, joggers, and dog walkers. It runs through, and includes, the walkways from the parking lots to the soccer field gates. Unlike walkways which were built or converted for "dead end" access to private fora, such as the Galleria walkway in *Hawkins v. City and County of Denver*, *supra*, or the Post Office walkway in *United States v. Kokinda*, 497 U.S. 720, 110 S.Ct. 3115, 111 L.Ed.2d 571 (1990), this sidewalk passes by, but does not end at, the City's limited use facility.

There is no reason to view these sidewalks as any different from any other city sidewalks. "Sidewalks, of course, are among those areas of public property that traditionally have been held open to the public for expressive activities and are clearly within those areas of public property that may be considered, generally without further inquiry, to be public forum property." *United States v. Grace*, 461 U.S. 171, 179, 103 S.Ct. 1702, 1708, 75 L.Ed.2d 736 (1983). Exceptions have been recognized when the sidewalk accessed only specific limited-use facilities, as

noted *supra*, or when the sidewalk was part of an area not traditionally open to public speech, such as a military reservation. *See, e.g.*, ***Greer v. Spock***, 424 U.S. 828 (1976).

In disapproving the free speech restrictions applied to the sidewalk on the Supreme Court grounds, the ***Grace*** court observed, "[t]here is no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks that serve as the perimeter of the Court grounds that they have entered some special type of enclave." 461 U.S. at 180. There is also no such indication to a citizen turning from the public sidewalk along 135th Street onto the sidewalk in question.

Although the City resists the classification, the sidewalk at issue runs through what is essentially a public park, at least in the traditional sense of a publically-owned outdoor recreational facility, open to the public. The fact that some amenities within the facility must be reserved and rented for a fee does not change the general character of the facility. (Certainly a city park providing soccer fields must use some system to allow teams and leagues to reserve the fields for use.) To persons using the sidewalks, access road, and jogging and hiking trail, and traversing the area to use the tennis courts and skate park, the area appears to be a public park – a traditional public forum. ***Perry***, 460 U.S. at 45.

Even the narrower description urged by Defendant is a subset of the public forum and should be viewed as such, rather than under the fiction that it exists detached from the sidewalk system and only attached to the parking lot and front gates. *Frisby v. Shultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) is illustrative. There, the Supreme Court upheld a ban on picketing on the public street and sidewalk when the protests were focused on a particular private home. The Court did not, however, limit the forum for purpose of categorization to the sidewalk in front of the home, but analyzed it as part of the city's streets and sidewalks generally, thus subjecting the regulation to the higher "public forum" standard. 487 U.S. at 480.[7] Similarly, in this case in which Plaintiffs are seeking general access to the facility and its patrons, it is appropriate to consider the general nature of the area to which Plaintiffs seek access, then determine if the restriction is adequately narrow.

The City has expressed its clear intent that most of the complex area (even the open city street running through it and the ball parks it has permanently leased to a third party) not be used for "First Amendment expressive activities." However, in a case where the inquiry focuses on property that has been

---

[7] The Court then upheld the ordinance, finding that, as interpreted, it was narrowly draw to serve a significant state interest – the well-being, tranquility and privacy of the home.

traditionally open to the public, such as a sidewalk, "objective characteristics are more important than and can override express government intent to limit speech." *First Unitarian Church of Salt Lake City v. Salt Lake City Corporation*, 308 F.3d 1114, 1124 (10th Cir. 2002). It would, of course, be absurd if the government could evade the First Amendment guarantee of free speech simply by expressing an intent to do so.

Further, assuming the walkways inside the gated and fenced areas constitute a non-public forum (a question not now before the Court), the City cannot transform the character of the sidewalks outside by simply including them in a restriction with the non-public forum sidewalks. *Grace*, 461 U.S. at 179, 103 S.Ct. 1708 (holding that the government may not transform the character of the property by including it within definition of non-public forum property). Thus, it is proper to consider the sidewalks outside the gated and fenced areas without combining them, as the Resolution does, with those inside the gated and fenced areas (which must be rented).

Given, then, that the sidewalk outside the gates is a public forum, the next inquiry is whether the restriction imposed in the Resolution is content-based or content-neutral. Plaintiffs urge a finding that the Resolution is content-based because it bans "uninvited" speech and permits officials to review the speech to

determine whether it is "invited."  The Court disagrees.  This element is substantially similar to that approved in **Hill v. Colorado**, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000), which banned communications unless "consented" to,  and permitted officials to examine speech to determine whether it was or was not consensual.  Defendant's Resolution, without discrimination, simply bans all First Amendment conduct.  Such a ban is content-neutral.

Because the ban is content-neutral, the City must establish that the restriction imposed on speech is narrowly drawn to serve a significant government interest and leaves open ample alternative channels of communication.  The City is not able to meet this burden.  The City has pointed to no authority that avoiding litter and promoting the efficient flow of pedestrian traffic are "significant government interests."  Indeed, the Supreme Court has held that "the purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on the public street from handling literature to one willing receive it.*"  Schneider v. State of New Jersey*, 308 U.S. 147, 162, 60 S.Ct. 146, 151, 84 L.Ed.2d 155 (1939).  The stated governmental concerns in this case certainly do not rise to the level of the government's concern in protecting the privacy of a private home.  *See, e.g.*, **Frisby**, *supra*.

Even if the stated purpose of the Resolution could be said to serve a

significant government interest, it is not possible to find that the Resolution is narrowly drawn.  It prohibits all expressive activity, whether or not such activity would contribute to the claimed problems, in all areas of the sidewalk and all along the public street.  In fact, the Resolution prohibits all First Amendment expressive activity almost everywhere within the complex, without regard to any relationship to its claimed purpose.

This is not to say that the City could not prohibit littering or obstructing pedestrian traffic into the gated areas.  But it cannot prohibit all expressive activity within the public forum out of such concerns.  If the concern of the City is, as stipulated, litter and ensuring the efficient flow of pedestrian traffic, the broad ban imposed by the Resolution is an excessive response to those concerns.  Because the sidewalks are a public forum, and Defendant cannot establish that the ban serves a significant government interest and is narrowly drawn to protect that interest, the Resolution prohibiting free speech on the sidewalks outside the fenced area violates the First and Fourteenth Amendments guarantee of free speech.[8]

The City of Overland Park Resolution 3946, insofar as it applies to the sidewalks outside the fenced and gated areas of the Soccer Complex, is an

---

[8] In light of this conclusion, it is unnecessary to determine whether the Resolution in unconstitutionally vague or overbroad.

unconstitutional restriction on Plaintiffs' First Amendment right of free speech. Its enforcement against speech activities in those areas is **PERMANENTLY ENJOINED**.

**Judgment is hereby granted in favor of Plaintiffs**.

Dated this 5th day of May, 2014, at Wichita, Kansas.

 S/ KENNETH G. GALE
Kenneth G. Gale
United States Magistrate Judge